THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES A. BERTALOT, Defendant-Appellant.

Third District   No. 3—87—0247

Opinion filed December 30, 1987.—Modified opinion filed January 25, 1988.

90

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, for appellant.

Marc Bernabei, State's Attorney, of Princeton (Howard R. Wertz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, James A. Bertalot, appeals from the judgment of the circuit court of Bureau County, which held him in indirect criminal contempt for the failure to complete the public service condition of his probation. After the expiration of the probation term, the State filed a petition for a rule to show cause asking for a finding of contempt for the failure to complete the work. The rule to show cause was issued, Bertalot was found to be in contempt, and the court sentenced him to six months' incarceration.

On September 24, 1984, Bertalot entered a negotiated plea on a one-count indictment for felony theft. The court accepted the plea and Bertalot was placed on two years' probation. One condition of the probation was that he complete 40 hours of public service work prior to April 1, 1985.

On February 22, 1985, Bertalot's probation officer contacted the Spring Valley police department to set up his public service work. That same day, Bertalot's probation officer instructed him to report to the police department. To the probation officer's knowledge, Bertalot failed to report that day.

Bertalot was next contacted on March 29, 1985. He stated he had not completed any of his public service work. He made the same statement on both April 19, 1985, and in May 1985. Bertalot told the probation officer that he never reported to the police due to a lack of transportation; however, his probation officer testified that on one occasion, Bertalot stated he had walked the distance previously after a night at a Spring Valley bar. The trial court then found Bertalot to be

in wilful contempt for failing to complete the public service work and sentenced him to six months' incarceration.

On appeal, Bertalot contends (1) that the trial court lacked jurisdiction to enter the contempt order because his probation period had expired prior to the filing of the rule to show cause, (2) that he was prejudiced because the State unfairly and unreasonably delayed the initiation of the contempt proceedings, (3) that the State failed to prove beyond a reasonable doubt that he was in indirect criminal contempt of the probation condition, and (4) that if the criminal contempt order is valid, that the case be remanded for resentencing because the trial court failed to afford him the opportunity to present any evidence in mitigation.

This case affords us the opportunity to establish some logical guidelines for the use of contempt and/or revocation proceedings when a defendant has allegedly violated some condition of his probation. These guidelines will serve to make available to the proper authorities the procedures to enforce the conditions of a defendant's probation while at the same time allow the defendant to be secure in the knowledge that once his probation is completed, he need not continually look over his shoulder.

Under section 5—5—3 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3), the legislature has made certain dispositions available, either alone or in combination, for felonies and misdemeanors. Unless the felony falls within the category provided for elsewhere in the section, the following sentencing alternatives are available: (1) a period of probation; (2) a term of periodic imprisonment; (3) a term of conditional discharge; (4) a term of imprisonment; (5) a repair or clean up order; (6) a fine; or (7) a restitution order. Any one of these may be used as the sole disposition in the appropriate case.

When a court sentences a defendant by imposing a fine, the legislature has seen fit to provide the court with the mechanism to enforce the sentence by enacting the civil contempt provisions of the Code. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—9—3(a), (b).) In such a case, the defendant may be imprisoned for the civil contempt and released upon payment of the fine. This procedure can be used at any time until the fine is paid.

This procedure, *i.e.*, statutory civil contempt, can also be used when the fine is made part of the terms of probation. It is of no consequence whether the money to be paid is a fine or in the form of costs and restitution. (*People v. Mowery* (1983), 116 Ill. App. 695, 452 N.E.2d 363.) As the *Mowery* court pointed out, "we see no quali-

tative difference between the two, especially since costs and restitution are much less penal in nature than a fine." 116 Ill. App. 3d 695, 703, 452 N.E.2d 363, 369.

In *Mowery*, the State filed a petition for a rule to show cause why the defendant should not be held in contempt for failure to pay the costs and restitution made part of his probation order. The court concluded that the rule to show cause proceedings were so deficient that the sentence imposed under the rule to show cause had to be vacated. Because of the final determination in *Mowery*, the only question remaining was whether, had the rule to show cause proceedings been properly conducted, the State could utilize that procedure rather than the probation revocation process to enforce a costs and restitution condition of probation.

The court's opinion is somewhat unclear on that point. The facts indicate that the probation period expired in October 1982 and that the contempt was determined in July 1982. The contempt proceedings were initiated and determined within the probationary period, and this would seem to suggest that, had the procedure been proper, the court would have the authority to find the defendant in contempt. However, the conclusion of the court suggests otherwise. The *Mowery* court concluded:

> "Ordinarily we would remand to the trial court for further proceedings. However, as we have indicated above, the defendant's period of probation expired in October 1982 and on that date the trial court lost jurisdiction of the matter. There is no provision in the statute for the period of probation being tolled upon the filing of a rule as is the case upon filing a petition to revoke. The trial court could take no further action in the matter * * *." *People v. Mowery* (1983), 116 Ill. App. 3d 695, 704, 452 N.E.2d 363, 370.

■■ Notwithstanding the court's conclusion, we find the better rule, when dealing with payment of money as a condition of probation, to be best stated by Justice Miller in his dissent in *Mowery*. He stated:

> "The expiration of probation should have no effect here, for the contempt is a separate proceeding and the circuit court's order was final and appealable. [Citations.] I would also construe the fine and restitution ordered here in combination with the defendant's probation as independent dispositions that survive the expiration of the period of probation." (116 Ill. App. 3d 695, 707, 452 N.E.2d 363, 372.)

Because fines and restitution are available as sole dispositions for sen-

tencing, we also adopt the view that they are independent dispositions and survive the expiration of the period of probation. Therefore, the civil contempt proceedings can be used either during or after the expiration of the probationary period to recover fines, costs, restitution, or other moneys owed which were made conditions of the probation.

The problem arises, as in the present case, where the condition of probation allegedly violated is exclusively available as a probationary condition and unable to stand alone as a sentencing alternative. Section 5—6—3 of the Code enumerates the conditions of probation. The statute states that the person shall:

"(1) not violate any criminal statute of any jurisdiction;

(2) report to or appear in person before such person or agency as directed by the court;

(3) refrain from possessing a firearm or other dangerous weapon; [and]
***

(5) [permit visits by the probation officer].

[The court may also require that the person]:

(1) serve a term of periodic imprisonment under Article 7 ***.;

(2) pay a fine ***;

(3) work or pursue a course of study or vocational training;

(4) undergo medical psychological, or psychiatric treatment; or treatment for drug addiction or alcoholism;

(5) attend or reside in a facility established for the instruction or residence of defendants on probation;

(6) support his dependents;
***

(8) make restitution ***;

(9) perform some reasonable public service work ***;

(10) serve a term of home confinement ***
* * *

[or]

(11) [comply with protection orders]." Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—3.

Only two of the listed probationary conditions, i.e., the paying of a fine and the payment of restitution, are able to be meted out by the court as the sole disposition in a criminal case. Both of these involve the payment of money. And as we have stated earlier, these can be enforced either during or after the probationary period through the statutory contempt provisions of sections 5—9—3(a) and (b) of the Code.

■ But in the case of the other probationary conditions, the statutory civil contempt provisions do not provide a remedy. If the probationer is imprisoned for noncompliance with the provision, he is unable to purge the contempt by compliance. In these cases, the general rule that a circuit court retains jurisdiction over a defendant who is serving a sentence of probation only so long as that period is yet in effect (*People v. Brown* (1986), 142 Ill. App. 3d 712, 492 N.E.2d 238), controls the actions of the court and the probation authorities. Once the period has lapsed, probation is terminated and there is nothing left to revoke or modify. *People v. Randolph* (1981), 98 Ill. App. 3d 696, 424 N.E.2d 893, *cert. denied* (1982), 459 U.S. 857, 74 L. Ed. 2d 110, 103 S. Ct. 128.

These rules were stated but not applied, as the State in the present case points out, in *People v. Draves* (1986), 149 Ill. App. 3d 657, 500 N.E.2d 1072. However, that case is not irreconcilable with the position that we espouse today because *Draves* also dealt with the attempted recovery of restitution, a fine, and costs.

If we were to permit the use of contempt proceedings, civil or criminal, to enforce the nonmonetary conditions of probation once the period of probation has expired, it would, in effect, make all probationary periods indefinite in nature. Once the period expired, the ex-probationer could be summoned in to court for any violation discovered after the expiration of the probationary term. This does not, however, preclude the State from enforcing the conditions of probation, either via the revocation proceedings or civil or criminal contempt, during the pendency of the term. It cannot be argued that the control does not reside with the court and the State to enforce the probationary conditions within that time period.

■ We hold that the State's use of contempt proceedings, regardless of whether they be deemed criminal or civil, was improper. The trial court was correct in finding that the State's recommendations that contempt proceedings be initiated, made during the pendency of Bertalot's term, did not rise to the level of filing a petition for a rule to show cause. Therefore, the facts show that the State took no action until after the probationary period had expired. On this basis, no contempt order could be issued for the violation of the public service condition.

■ However, even if we determined that the use of contempt proceedings, after the expiration of the period of probation and for the enforcement of nonmonetary conditions, was proper, we would nevertheless be compelled to reverse the decision in this case. The State presented only one witness—Bertalot's probation officer. From

her testimony alone, the court determined that the failure to perform the public service work was wilful. No member of the police department was called to determine if or when there was work to be done by the defendant. We fail to see how, without more, the sole testimony of the probation officer could establish both the physical action and the mental state required to prove Bertalot guilty of the indirect criminal contempt beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Bureau County is reversed.

Reversed.

BARRY, P.J., and SCOTT, J., concur.